IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| GEORGE MILLER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.  15-cv-9701-JAR |
| | ) | |
| NEP GROUP, INC., | ) | |
| et al., | ) | |
| | ) | |
| Defendants. | ) | |

**<u>MEMORANDUM AND ORDER</u>**

This matter is before the Court on Plaintiff's Motion for Sanctions (ECF No. 68).

Pursuant to Fed. R. Civ. P. 37, Plaintiff requests that the Court impose sanctions on Defendant

Screenworks, LLC ("Screenworks") for producing Rule 30(b)(6) corporate representatives who

were not prepared to testify on designated deposition Subjects and for one of the representative's

refusal to answer numerous questions following improper objections by counsel during that

representative's deposition.  As explained below, the motion is granted in part and denied in part.

I.      **PROCEDURAL BACKGROUND**

Plaintiff George Miller brings this action seeking damages for injuries he sustained while

taking down large screen video display equipment at the Kansas Speedway in Kansas City,

Kansas. One issue in dispute is the identity of Plaintiff's employer at the time Plaintiff was

injured.  Plaintiff contends that he was working at that time through his employment with the

IATSE Local 31, and he was not an employee of Defendants NEP Group, Inc., NEP

Broadcasting LLC, or Screenworks. Defendants contend that Screenworks was Plaintiff's

employer at the time Plaintiff sustained his injuries.

On August 4, 2016, Plaintiff served Rule 30(b)(6) notices of deposition upon Defendant Screenworks. Pertinent to the present motion, the notices required Screenworks to designate a representative to testify on the following subjects (the "Subjects"):

1.      Screenworks' knowledge regarding the October 7, 2013 incident at The Kansas Speedway during which Plaintiff claims he was injured.

2.      Screenworks' knowledge regarding the identity of all witnesses present at The Kansas Speedway on October 7, 2013 who claim to have knowledge of the incident that Plaintiff claims caused his injury.

3.      Screenworks' knowledge regarding the facts contained in all incident reports mentioning or pertaining to the October 7, 2013 incident at The Kansas Speedway during which Plaintiff claims to have been injured, including the date each such report was prepared and who prepared each such report.

4.      Screenworks' knowledge of the employment history of Jeffery Glenn Smith with Screenworks, including his training, duties and responsibilities for the event held at The Kansas Speedway in October 2013.
. . .

6.      Screenworks' knowledge of any contractual or other relationship between Screenworks and the IATSE Local 31.

7.      Screenworks' safety policies and procedures to be followed when undertaking the activity that was being conducted at the time Plaintiff claims he was injured on October 7, 2013 at The Kansas Speedway

8.      Screenworks' policy for hiring and supervising contracted stagehands in October 2013.

9.      All safety policies and procedures that were to be followed in performing the work that was being performed at the Kansas Speedway on October 7, 2013.

10.     All training provided by Screenworks to employees of Screenworks and/or to contracted workers for work performed at The Kansas Speedway on October 7, 2013, including who provided the training, the subject matters covered in the training, what training was provided concerning safety and/or maintaining a safe working environment and whether any written documentation was provided to employees of Screenworks and/or contracted workers concerning safety.

11.     All oral and/or written information, guidance, suggestions or directions provided or given to Screenworks' employees concerning safety and/or maintaining a safe working environment.

12.     Screenworks' knowledge of the procedures, practices and protocols in place for disassembly, lowering and handling of trusses in October 2013 at The Kansas Speedway, including the specifics of each procedure, practice and protocol and how Screenworks' employees ensured the procedures, practices and protocols were followed.

13.     Screenworks' knowledge of the documents produced by Screenworks pursuant to the Requests for Production from Plaintiff, including Screenworks' knowledge of the information contained therein.

14.     Screenworks' knowledge of the answers provided by Screenworks pursuant to the Interrogatories from Plaintiff, including Screenworks' knowledge of the information contained therein.

15.     The facts known by Screenworks and on which it relied for its Affirmative Defenses to Plaintiff's Petition.

16.     Reports made to the Kansas Division of Workers Compensation and/or the Missouri Division of Workers Compensation relating to George Miller and the October 7, 2013 incident at The Kansas Speedway.[1]

In response to Plaintiff's Rule 30(b)(6) deposition notices, Screenworks produced Dean Naccarato ("Naccarato"), its General Counsel, and Ashley Lawrence ("Lawrence"), the Human Resources Manager for NEP Broadcasting LLC, for deposition in Pittsburgh, Pennsylvania on August 12, 2016.  During Lawrence's deposition, she referred to Cheri Navarro ("Navarro"), Manager of Administration for Screenworks, as another person with information relevant to the case.[2] Defense counsel then agreed to produce Navarro to testify as to Subject 3. Screenworks thereafter produced Navarro and Kevin Hoyle ("Hoyle"), Vice President of Operations for Screenworks, in Riverside, California on August 25, 2016. By agreement of the parties, counsel

---

[1] *See* Notices of Dep. of Screenworks, ECF Nos. 57 and 60.

[2] Lawrence Dep. 23:12–16, ECF No. 76-4.

for Plaintiff attended the California and Pennsylvania depositions via video-conference from

Kansas City, Missouri.[3]

On August 31, 2016, Defendants' counsel emailed the parties' proposed Pretrial Order to

the Court.  The Discovery section of the Pretrial Order included the following description of the

status of discovery:

> Additionally, it is Plaintiff George Miller's position that discovery is incomplete
> as it pertains to the deposition of Defendant Screenworks LLC. . . . Plaintiff
> intends to file a Motion to address the issues relating to the deposition of
> Defendant Screenworks LLC, as some of the witnesses were unprepared to
> provide the testimony on which they were designated to testify and/or refused to
> provide testimony on which they were designated to testify.  Depending on the
> Court's ruling on the Motion, additional deposition testimony of Defendant
> Screenworks LLC may be required.  However, it is Defendants' position that
> more than adequate discovery has taken place, including depositions of Plaintiff,
> Defendant Jeffrey Smith, Defendants' corporate representatives, and a non-party
> representative of the local labor union I.A.T.S.E., local 31 to not only satisfy any
> and all discovery requests in this matter but further demonstrate to Plaintiff that
> his case is precluded under the Workers' Compensation Act and any continued
> pursuit of this litigation is unsupportable considering the clear, black-letter law
> regarding the applicability of the Workers' Compensation Act.

At the September 6, 2016 Final Pretrial Conference, the Court inquired regarding

Plaintiff's stated anticipated motion relating to the Screenworks' Rule 30(b)(6) depositions.

After discussion with the parties, the Court ordered Plaintiff to file his motion by September 9,

2016 and expedited Defendants' response deadline.  Plaintiff thereafter timely filed his Motion

for Sanctions (ECF No. 68) on September 9, 2016, and Defendants filed their Response (ECF

No. 76) on September 13, 2016.  The Court entered the Pretrial Order on September 16, 2016.[4]

---

[3] *See* Dep. Notices, ECF Nos. 57 & 60.

[4] The Court added a reference to the motion and response in the Pretrial Order and at Defendants'
request, inserted the following footnote: "By agreeing to the inclusion of this reference in the Pretrial
Order to Plaintiff's filing of his Motion for Sanctions, Defendants shall not be deemed to have waived the
issues raised in Defendants' Response, including the failure to comply with D. Kan. Rule 37.2." Pretrial
Order, ECF No. 77, at 9 n.1. The Court is not finding that Defendants waived any failure-to-confer
argument.

## II.    DUTY TO CONFER

As an initial matter, Defendants argue that Plaintiff's motion should be denied for failure to confer prior to filing it. Under Fed. R. Civ. P. 37(a)(3)(B)(i), a party seeking discovery may move for an order compelling an answer if a deponent fails to answer a question asked at oral deposition. Rule 37(a)(1) requires that a party moving to compel discovery include in its motion a "certification that the movant has in good faith conferred or attempted to confer with the party in an effort to secure the discovery without court action."

Similarly, D. Kan. Rule 37.2 provides that "[t]he court will not entertain any motion to resolve a discovery dispute pursuant to Fed. R. Civ. P. 26 through 37 . . . unless counsel for the moving party has conferred or has made reasonable effort to confer with opposing counsel concerning the matter in dispute prior to the filing of the motion." The local rule also requires the certification to describe with particularity the steps taken by all counsel to resolve the issue in dispute.[5] However, despite the unqualified language of the federal and local rules, the court, in its discretion, may choose to determine a motion to compel on its merits even when the duty to confer has been unfulfilled under certain circumstances.[6] In other instances, the court may deny a

---

[5] D. Kan. Rule 37.2. *See also Williams v. Bd. of Cty. Comm'rs of Unified Gov't of Wyandotte Cty. & Kan. City, Kan.,* 192 F.R.D. 698, 700 (D. Kan. 2000).

[6] *See White v. Graceland Coll. Ctr. for Prof. Dev. & Lifelong Learning, Inc.,* No. 07-2319-CM, 2009 WL 722056, at *2 (D. Kan. Mar. 18, 2009) (holding that "the interests of justice are best served by taking up the motion [to compel] on its merits" when the court could understand why Plaintiff's counsel interpreted a prior order to mean that Plaintiff could reapply for relief without conferring); *Oleson v. Kmart Corp.,* 175 F.R.D. 570, 572 (D. Kan. 1997) (noting plaintiff's discovery-related motion would not be denied for failure to confer because "based on the number and tenor of the discovery disputes in this case, it is unlikely that the issues before the court would have been resolved by additional efforts to confer between counsel").

motion without prejudice to refiling the motion after the moving party has made efforts to confer.[7]

It is undisputed that Plaintiff's motion fails to include a certification his counsel has in good faith conferred or attempted to confer with Screenworks to resolve the dispute at issue without court action, as required by Fed. R. Civ. P. 37(a)(1) and D. Kan. Rule 37.2. Further, Defendants affirmatively allege that Plaintiff's counsel made no attempt to confer before filing the motion and as such, Plaintiff's motion should be denied on that basis.

Notwithstanding Plaintiff's failure to comply with Fed. R. Civ. P. 37(a)(1) and D. Kan. Rule 37.2, the Court finds the interest of justice will be best served by it taking up the merits of Plaintiff's motion, and the Court excuses Plaintiff's failure given the unique circumstances in this case.[8] First, Defendants' counsel was aware of the issues Plaintiff intended to raise in his motion based upon the issues raised during the disputed depositions, Plaintiff's reference to the forthcoming motion in the proposed Pretrial Order, and mention of the anticipated motion at the September 6, 2016 Pretrial Conference. Second, the proposed Pretrial Order submitted before the Pretrial Conference also specifically included Defendants' position on Plaintiff's proposed motion, namely that more than adequate discovery had taken place to satisfy Plaintiff's discovery requests. Third, based upon the detailed description of the discovery dispute in the proposed Pretrial Order and no mention of a failure-to-confer objection by Defendants at the Pretrial Conference, the Court believed the parties had already conferred and imposed a short three-day

---

[7] *See Harley Davidson Credit Corp. v. Flint*, No. 13-CV-2026-KHV-TJJ, 2014 WL 505357, at *4 (D. Kan. Feb. 7, 2014) ( denying motion for sanctions and to compel answers to deposition questions without prejudice to plaintiff refiling the motion after making efforts to confer with defendant regarding deposition questions).

[8] The Court also finds that it would not be efficient to deny Plaintiff's motion without prejudice and to require the parties to confer at this juncture, i.e., after the close of discovery and after the filing of Defendants' motion for summary judgment.

deadline for Plaintiff to file his motion.  Fourth, as set out fully below, Defendants' mishandling of its Rule 30(b)(6) witnesses necessitates the relief granted herein. Thus, without condoning Plaintiff's failure to properly confer, the Court excuses the failure in the interest of justice.

## III.    DISPUTES REGARDING RULE 30(b)(6) DEPOSITIONS

Plaintiff requests that the Court enter an order striking Screenworks' affirmative defenses as a reasonable and appropriate sanction for designating and producing Rule 30(b)(6) witnesses who were not prepared to testify on the Subjects set forth in the deposition notices, and for Naccarato's refusal to answer numerous questions following improper objections and instructions by defense counsel.  Plaintiff alternatively requests that the Court order Screenworks to produce individuals who are prepared to answer deposition questions on the requested Subjects, with such depositions occurring in Kansas City at the cost and expense of Screenworks.

### A.    Naccarato Deposition

Naccarato, Defendants' General Counsel, was Defendant Screenworks' designated Rule 30(b)(6) corporate representative as to Subjects 1, 2, 4, 6, 14, and 15.[9]

### 1.    Deposition Objections Based Upon Attorney-Client Privilege

During the Rule 30(b)(6) deposition of Naccarato, Plaintiff's counsel asked Naccarato a series of questions pertaining to Subject 15 (the facts known by Screenworks and upon which it relied for each of its affirmative defenses).  In response to questions about the affirmative defenses asserted in specific paragraphs of Defendants' answer, Defendants' counsel posed a series of objections, as excerpted below:

---

[9] Naccarato Dep. 6:2–7:4.

## **Paragraph 13 Affirmative Defense**

Q:   Can you please tell me the facts on which Screenworks relied for that affirmative defense in paragraph 13 [of the answer].

[Defendants' counsel]:   Object to form. Object to foundation. To the extent this is seeking information that is gained through conversations with counsel, I advise you not to answer. To the extent you're able to answer without revealing any conversations you have had with counsel, you may. However, I further object in that the pleading speaks for itself. But go ahead.

Q:   I'm asking for the facts on which that is based.

[Defendants' counsel]: The same objections. The same objections. Go ahead.

A:   I am not aware of any outside of what I've discussed with Taylor Connolly and his firm.[10]

## **Paragraph 14 Affirmative Defense**

Q:   Paragraph 14 . . . the defense says Plaintiff has failed to mitigate his alleged damages.

[Defendants' counsel]:   The same objections.

A:   And the same answer as 13.[11]

## **Paragraph 15 Affirmative Defense**

Q:   Can you tell me facts on which Screenworks relied for the affirmative defense in paragraph 15?

[Defendants' counsel]:    The same objections.

A:   And the same answer as 13.

Q:   You don't . . . know other than information that has been provided through your counsel?

[Defendants' counsel]:   The same objections.

---

[10] Naccarato Dep. 62:3–21, ECF No. 76-3.

[11] Naccarato Dep. 62:25–63:6.

Q:   Correct?

A:   Correct.[12]

## **Paragraph 16 Affirmative Defense**

Q:   And then paragraph 16 of the Answer, can you tell me the facts known by Screenworks and on which it relied for its affirmative defense set forth in paragraph 16?

[Defendants' counsel]:   The same objections.

A.   And the same answer as 13.

. . .

Q:   You don't know other than through your communications with counsel, correct?

A:   Correct.[13]

## **Paragraph 17 Affirmative Defense**

Q:   [Paragraph 17] references the negligence or fault of any other persons or entities, including nonparties to this action; correct?

A:   Correct.

Q:   Can you identify as you sit here now any other persons or entities or nonparties?

[Defendants' counsel]:   The same objections. Additionally, the pleadings in this case speak for themselves. Additionally, the designations of other parties through which fault can be compared which has been filed with the court in this matter speak for themselves. So to the extent you can talk on this absent information gained through conversations with me, then you can answer.

A:   The same answer as 13.

Q:   Screenworks doesn't have any information apart from information discussed with its counsel, correct?

---

[12] Naccarato Dep. 63:11–23.

[13] Naccarato Dep. 63:24–64:8.

A:    Correct.

Q:    [P]aragraph 17 makes a reference in the second paragraph to Plaintiff's injuries were the fault of others. Do you see that?

A:    I do.

Q:    Can you identify any such persons as you sit here?

[Defendants' Counsel]:    The same objections.

A:    The same answer as 13.[14]

## **Affirmative Defenses Generally**

After a break in the deposition, the questioning continued, as follows:

Q:    [T]here's just something I want to clarify on the record. When we talked about subject matter 15 asking for the facts known by Screenworks on which it based the affirmative defenses, I believe your counsel instructed that you shouldn't convey those facts for any of the paragraphs of the affirmative defenses. So I just need to know, are you going to abide by your counsel's direction and not provide that factual information?

[Defendants' Counsel]:    No, that is not counsel's objection. The objection as it was on the record . . . the objection was to the extent he is able to testify absent information gained through counsel, then he can; however, to the extent he has to rely on conversations with counsel and information gained through counsel, then I am instructing him not to answer since those would clearly be privileged and attorney-client communications. That was the objection.

Q:    Okay.

[Defendants' counsel]:    Do you understand the objection?

A:    I do.

[Defendants' counsel]:    Do you understand my instruction?

A:    I do.[15]

---

[14] Naccarato Dep. 64:20–66:5.

[15] Instructions like these have been found to be inappropriate witness coaching. *See Cincinnati Ins. Co. v. Serrano*, No. 11-2075-JAR, 2012 WL 28071, at *5 (D. Kan. Jan. 5, 2012) ("Instructions to a

. . .

Q:   Now I'm asking him other than information obtained from counsel does
Screenworks have – can you convey any facts on which it relies for any
affirmative defenses raised in the answer to Plaintiff's petition?

A:   No.[16]

Plaintiff's counsel also asked Naccarato deposition questions regarding Subject 14, i.e.,

Screenworks' knowledge of and information contained in its interrogatory answers.  Defendants'

counsel continued to assert the same objection as follows.

## Supplemental Answers to Interrogatories

Q:   [Your supplemental answer] goes on to say, " . . . Plaintiff George Miller
was compensated by Defendant to perform work for and on behalf of Defendant
at the Kansas Speedway on October 7, 2013, in part of its overall operations at the
speedway." Did I read that correctly?

A:   Yes.

Q:   What information do you have about how Mr. Miller was compensated?

[Defendants' counsel]:   Object to form and foundation. To the extent that you
would have to rely upon information gained in conversations with counsel in
order to answer that question, I instruct you not to answer that question; however
if you are able to answer that question independent of conversations you have had
with counsel, then you may answer that question. Additionally, the answers to this
Interrogatory speaks for itself. Go ahead.

A:   I have no information on this that I didn't glean from conversations with
Screenworks' counsel on the matter.

Q:   And what information do you have – it goes on to say "in part of its overall
operations of the speedway. . . ."

[Defendants' counsel]:   The same objections. Go ahead.

---

witness that they may answer a question 'if they know' or 'if they understand the question' are raw,
unmitigated coaching, and are never appropriate. This conduct, if it persists after the deposing attorney
requests that it stop, is misconduct and sanctionable." ).

[16] Naccarato Dep. 66:23–68:20.

A:   And the same answer.

Q:   No information except through communications with Screenworks' counsel; correct?

A:   Correct.

Q:   And those conversations with counsel wherein you may have been provided factual information that formed the basis of this Interrogatory or the basis of the affirmative defenses, if I understand correctly, you're not going to discuss those here today, correct?

[Defendants' counsel]:   Object to form. The answer is there. To the extent you're seeking information that he's learned through conversations with counsel, that is privileged pursuant to the attorney-client communication. If you're asking him for information he has not received through counsel that is not otherwise represented in that answer, then he can answer that. But if you're asking for information you've only gleaned through counsel, then I would advise you not to answer.

Q:   Can you read back the question.

(The reporter read back from the record as requested.)

[Defendants' counsel]:   And the same responses and the same objections. Go ahead.

A:   I have no facts or information other than what I've discussed with Screenworks' counsel on the issue.

Q:   Right. And my question is, you're not going to discuss those here today, the factual information that may have been provided, based on the advice of your counsel; correct?

A:   Correct.[17]

As set out in Naccarato's deposition, Defendants' counsel asserted objections that the

questions sought information and/or facts obtained through conversations with counsel, which

are protected by the attorney-client privilege.  Plaintiff argues that how Naccarato came to know

---

[17] Naccarato Dep. 69:22–72:12.

or possess the facts is irrelevant and it was improper to refuse to answer the questions during the deposition.

Federal Rule of Evidence 501 governs privilege issues in federal courts. In this case the Court's jurisdiction is based upon diversity. Although applying choice of law principles to this case results in Kansas law defining the scope of the attorney-client privilege, this Court agrees with other cases from this District that there is no conflict between federal and Kansas law regarding the attorney-client privilege and it generally makes no difference which law is applied.[18]

"The attorney-client privilege applies to communications between a client and an attorney, made in confidence, under 'circumstances from which it may reasonably be assumed that the communication will remain in confidence.'"[19] Notably, this privilege protects only the "disclosure of *communications* between the attorney and client, and does not protect disclosure of *underlying facts* by those who communicated with the lawyer."[20] "It is well established that a party may not withhold relevant facts from disclosure simply because they were communicated to, or *learned from*, the party's attorney."[21] *Upjohn* clarified this distinction between communications and underlying facts as follows: "The client cannot be compelled to answer the question, 'What did you say or write to the attorney?' but may not refuse to disclose any relevant

---

[18] *See Heartland Surgical Specialty Hosp., LLC v. Midwest Div., Inc.,* No. 05-2164-MLB-DWB, 2007 WL 2192885, at *4 (D. Kan. July 25, 2007); *Marten v. Yellow Freight Sys., Inc.*, No. 96-2013-GTV, 1998 WL 13244, at *4–5 (D. Kan. Jan. 6, 1998). Accordingly, in this opinion the Court will rely primarily upon federal cases from the District of Kansas.

[19] *Heartland Surgical*, 2007 WL 2192885, at *5 (quoting *In re Qwest Commc'ns Int'l Inc.*, 450 F.3d 1179, 1185 (10th Cir. 2006)).

[20] *Id. See also Upjohn Co. v. United States*, 449 U.S. 383, 395–96 (1981).

[21] *Kansas Wastewater, Inc. v. Alliant Techsystems, Inc.,* 217 F.R.D. 525, 528 (D. Kan. 2003) (emphasis added). As evidenced by the highlighted portion of the quote, facts the deponent <u>learned from</u> the attorney are not protected by the attorney-client privilege.

fact within his knowledge merely because he incorporated a statement of such fact into his communication with his attorney."[22]

The general rules regarding burden of proof with respect to the attorney-client privilege are as follows:

> It is well established that the party objecting to discovery on the basis of the attorney-client privilege bears the burden of establishing that the privilege applies. To carry that burden, the party must make a "clear showing" that the asserted privilege applies. Moreover, this Court is required to strictly confine the privilege "within the narrowest possible limits consistent with the logic of its principle."[23]

Federal Rule of Civil Procedure 30(c)(2) provides that objections during a deposition must be noted on the record, but the deposition proceeds subject to the objection. "An objection must be stated concisely in a nonargumentative and nonsuggestive manner."[24] A deponent may be instructed not to answer only in limited circumstances, including when necessary to preserve a privilege.[25]

Timely objection must be made during a deposition to avoid waiver of an objection that "relates to the manner of taking the deposition, the form of a question or answer. . . or other matters that might have been corrected at [the time of the deposition.]"[26]  But objections to relevance or materiality of testimony are not waived by failure to timely object during the deposition, unless the basis for the objection could have been corrected at the time.[27]

---

[22] *Upjohn*, 449 U.S. at 396.

[23] *Kansas Wastewater*, 217 F.R.D. at 527.

[24] Fed. R. Civ. P. 30(c)(2).

[25] *Id.*

[26] Fed. R. Civ. P. 32(d)(3)(B)(i).

[27] Fed. R. Civ. P. 32(d)(3)(A).

The District of Kansas has adopted Deposition Guidelines to promote the principles set out in the Federal Rules and to facilitate "the efficient and fair conduct of depositions."[28] The Guidelines instruct, in part:

> Objections shall be concise and shall not suggest answers to or otherwise coach the deponent. Argumentative interruptions will not be permitted. The only objections that should be asserted are those involving privilege or work product protection or some matter that may be remedied if presented at the time, such as an objection to the form of the question or the responsiveness of the answer. Other objections shall be avoided unless the deposition is being taken for the express purpose of preserving testimony.[29]

> Counsel shall not direct or request that a deponent not answer a question, unless (1) counsel has objected to the question on the ground that the answer is protected by privilege, work product immunity, or a limitation on evidence directed by the Court; or (2) the direction not to answer is necessary to allow a party or deponent to present a Fed. R. Civ. P. 30(d) motion to the Court.[30]

In the first of the series of objections at issue here, Defendants' counsel objected to Plaintiff's question regarding the facts relied upon for the affirmative defense in paragraph 13 of the answer. Defendants objected on the bases of form, foundation, and that the pleading "speaks for itself." In addition, Defendants' counsel explicitly instructed Naccarato not to answer "to the extent [the question was] seeking information that [was] gained through conversations with counsel."[31] Plaintiff's counsel then reiterated that she was asking for the "facts" on which the affirmative defense was based. Defendants' counsel responded, "same objection." Then

---

[28] *Cincinnati*, 2012 WL 28071, at *4.

[29] Deposition Guidelines of the United States District Court for the District of Kansas, ¶ 5(a).

[30] *Id.* at ¶ 5(b).

[31] Naccarato Dep. 62:7–9.

Naccarato answered, "I am not aware of any outside of what I've discussed with [Defendants' counsel] and his firm."[32]

Plaintiff is entitled to know the factual basis for Defendants' affirmative defenses.[33] Plaintiff's question was a proper inquiry into the facts that support the affirmative defense asserted in paragraph 13 of Defendants' answer. Plaintiff did not ask Naccarato to disclose the substance of any communications he may have had with Defendants' counsel. Following defense counsel's initial objection, Plaintiff's counsel reiterated that she was asking only for the facts upon which Defendant Screenworks relied. Yet, Defendants' counsel persisted in asserting the same objections.

Defendants' objections were improper for a number of reasons. Because the primary thrust of the objections and the basis upon which Naccarato was instructed not to answer was the attorney-client privilege, the Court will address that issue first. Even presuming Naccarato's answer would have revealed facts from conversations he had with Defendants' counsel, that would not render the "facts" protected from discovery by the attorney-client privilege.[34] "A fact is discoverable regardless of how a deponent came to possess it."[35] This is true even if Defendants' attorney informed the deponent of the facts.[36] The instruction by Defendants' counsel to Naccarato not to answer to the extent the question sought "information gained through

---

[32] Naccarato Dep. 62:20–21.

[33] *W. Res., Inc. v. Union Pac. R.R. Co.*, No. 00-2043-CM, 2001 WL 1718130, at *2 (D. Kan. Nov. 26, 2001).

[34] *See Kansas Wastewater,* 217 F.R.D. at 528.

[35] *Id.* at 529.

[36] *Id.* at 528 ("[T]he privilege does not protect facts that an attorney conveys to his client.").

conversations with counsel" was an improper and inaccurate assertion of the attorney-client privilege.

Defendants say they do not dispute that Plaintiff is entitled to discover the facts upon which Defendants' affirmative defenses are based, but that Plaintiff has been provided all such facts. In support of their argument, Defendants point to the final seven pages of the Naccarato deposition. In that testimony, Defendants claim Naccarato identified his written response to Plaintiff's interrogatory requesting all facts upon which Screenworks bases its affirmative defenses, and Defendants claim Naccarato also "explained at length the basis for his written response."[37]

Defendants' argument is untenable. The seven pages of Naccarato's testimony upon which Defendants rely is the *redirect by Defendants' counsel,* after Plaintiff's counsel concluded her examination of Naccarato. Defendants cannot assert the attorney-client privilege and instruct Naccarato not to answer Plaintiff's questions regarding the facts that support Defendants' affirmative defenses, and then successfully defend their improper assertion of the privilege by arguing that Plaintiff has been provided all of those facts through Naccarato's answers to different questions prepared/selected and asked (spoon-fed) by Defendants' counsel's leading questions to Naccarato.[38]

Nor can Defendants simply direct Plaintiff to Defendants' first supplemental answer to Interrogatory No. 1 of Plaintiff's second interrogatories in lieu of answering Plaintiff's questions regarding the underlying facts. The Court also notes that Interrogatory No. 1 relates only to the

---

[37] Defs' Mem. in Opp'n, ECF No. 76 at 5.

[38] The Court strongly disagrees with Defendants' assertion that Plaintiff's counsel indicated she was satisfied with Naccarato's testimony when she stated, "I have nothing" at the end of the deposition. The deposition excerpts quoted above clearly demonstrate that Plaintiff's counsel was very unsatisfied with Naccarato's refusals to answer questions.

facts that support the affirmative defense asserted in paragraph 16 of Defendants' answer. Neither that answer, nor the questions asked of Naccarato by Defendants' counsel address all of the affirmative defenses asserted by Defendants. As already noted above, Plaintiff is entitled to know the facts that support Defendants' affirmative defenses; that necessarily encompasses Plaintiff's right to inquire at deposition regarding the factual basis for the affirmative defenses.[39]

Defense counsel's objections to the questions regarding the paragraph 13 affirmative defense were also improper because they were speaking objections that suggested the answer to Naccarato.[40] The suggestion (instruction) and coaching (not to answer to the extent the question sought information gained through conversations with counsel)[41] clearly worked. Naccarato essentially parroted, "I am not aware of any [facts] outside of what I've discussed with [Defendants' counsel] and his firm."[42]

Defense counsel lodged essentially these same objections to Plaintiff's questions asking Naccarato to provide the facts supporting every one of Defendants' affirmative defenses. In each

---

[39] Defendants' argument that Plaintiff's questions improperly sought the "theories" upon which Defendants' affirmative defenses are based is simply unsupported by the record. In the line of questioning at issue, Plaintiff expressly asked the "facts" that support the affirmative defenses and never mentioned or inquired about Defendants' theories.

[40] *See Cincinnati*, 2012 WL 28071, at *4 (D. Kan. Deposition Guidelines prohibit objections which suggest answers to or otherwise coach the witness, commonly called "speaking objections"). Additionally, Defendants' objections to lack of foundation and that the pleadings speak for themselves were improper. *See AKH Co., Inc. v. Universal Underwriters Ins. Co.*, No. 13-2003-JAR-KGG, 2016 WL 141629, at *4 n.6 (D. Kan. Jan. 12, 2016) ("Generously interpreted, the following objections were improper relevance or foundation objections: overbroad, speculation, lack of foundation, misstates the testimony, out of context, assumes facts not in evidence, the document speaks for itself, misstates the document, improper or incomplete hypothetical, legal conclusion, improper hypothetical, calls for expert opinion.").

[41] This objection and instruction are akin to those the court addressed in *Cincinnati*, 2012 WL 28071, at *5 ("Instructions to a witness that they may answer a question 'if they know' or 'if they understand the question' are raw, unmitigated coaching, and are *never* appropriate.").

[42] Naccarato Dep. 62:20–21.

of the objections, Defendants' counsel included an instruction to the effect that Naccarato was

not to answer to the extent the question sought information gained through conversations with

counsel. When Plaintiff's counsel sought clarification, Defendants' counsel stated:

> [T]he objection was to the extent he is able to testify absent information gained
> through counsel, then he can; however, *to the extent he has to rely on*
> *conversations with counsel and information gained through counsel*, *then I am*
> *instructing him not to answer since those would clearly be privileged and*
> *attorney-client communications.* That was the objection.[43]

This clarification only further highlights the impropriety of the objections and instruction

not to answer. As discussed above, Plaintiff's questions expressly inquiring as to the facts were

*not* seeking attorney-client communications and Defendants' objections on the basis of the

attorney-client privilege were fundamentally flawed. Defense counsel's interjection of these

improper speaking objections and instructions to Naccarato not to answer throughout the entire

line of questioning regarding the factual basis for each of the affirmative defenses denied

Plaintiff the ability to obtain factual information regarding Subjects 1 and 2 from Screenworks'

designated 30(b)(6) witness. This was highly improper and consequences will flow from it.

While counsel must act to protect the interests of their clients in defending depositions, they must

act within the boundaries of the applicable rules and this Court's Deposition Guidelines.

### 2.      Objections that Rule 30(b)(6) Witness was Unprepared

Plaintiff also seeks sanctions with regard to Naccarato's deposition testimony concerning

Subjects 1, 2, 4, and 6, on grounds that Naccarato was not prepared to answer questions related

to these Subjects as required by Rule 30(b)(6).

---

[43]  Naccarato Dep. 67:11–18 (emphasis added).

Naccarato testified that he did not review any documents other than the Notice of Deposition and did not talk with anyone other than Defendants' attorney prior to his deposition.[44] Regarding Subjects 1 and 2 (Screenworks' knowledge of the October 7, 2013 incident and identity of witnesses present), Naccarato testified that Screenworks' knowledge is what is in the incident report that was produced in the case.[45] He testified that the only employee of Screenworks he was aware of that was present on October 7, 2013 was Defendant Jeffrey Smith.[46]  But Naccarato admitted that prior to his deposition he had not seen the production worksheet produced by Screenworks, which showed other employees present on October 7, 2013.[47] Naccarato could not say whether anyone other than Smith and Plaintiff were present or performed work at the Kansas Speedway on October 7, 2013.[48] He directed Plaintiff to Hoyle for that information.[49] But Hoyle subsequently testified that other than information set out in the production worksheet, he did not know who was present at the Kansas Speedway on October 7, 2013, nor did he have any of the particulars of that job.[50]

Regarding Subject 4, see the discussion concerning Naccarato in the following section regarding the Lawrence deposition.

Regarding Subject 6 (Screenworks' knowledge of contractual or other relationship between Screenworks and the IATSE Local 31), when asked about Screenworks' contact with

---

[44] Naccarato Dep. 8:8–24.

[45] Naccarato Dep. 11:19–25.

[46] Naccarato Dep. 18:11–19:2.

[47] Naccarato Dep. 20:12–18.

[48] Naccarato Dep. 45:17–46:5.

[49] Naccarato Dep. 47:6–24.

[50] Hoyle Dep. 76:22–77:20, ECF No. 76-5.

IATSE on the Kansas Speedway October 2013 project and how it was that stagehands from the local IATSE came to be at that project, Naccarato repeatedly stated he was not aware. Once again, he referred Plaintiff to Hoyle for more information.[51] But Hoyle subsequently testified he was not involved in lining up stagehands through IATSE.[52]

Rule 30(b)(6) requires that persons designated to testify on behalf of an entity "must testify about information known or reasonably available to the organization." Thus, the Rule implicitly requires a designated representative to review all matters known or reasonably available to the organization in preparation for the Rule 30(b)(6) deposition.[53] This is necessary to prevent a party from sandbagging its opponent by conducting a minimal inquiry before the deposition but a thorough inquiry in preparation for trial, which would defeat the purpose of discovery.[54]

> A notice of deposition made pursuant to Rule 30(b)(6) requires the corporation to produce one or more officers to testify with respect to matters set out in the deposition notice or subpoena. A party need only designate, with reasonable particularity, the topics for examination. *The corporation, then must not only produce such number of persons as will satisfy the request, but more importantly, prepare them so that they may give complete, knowledgeable and binding answers on behalf of the corporation.*[55]

Foremost among the purposes of Rule 30(b)(6) is to "curb the 'bandying' by which officers or managing agents of a corporation are deposed in turn but each disclaims knowledge

---

[51] Naccarato Dep. 32:15–36:14.

[52] Hoyle Dep. 77:13–78:2.

[53] *Starlight Int'l, Inc. v. Herlihy*, 186 F.R.D. 626, 638 (D. Kan. 1999).

[54] *Id.*

[55] *Audiotext Commc'ns Network, Inc. v. US Telecom, Inc.*, No. 94-2395-GTV, 1995 WL 625962, at *13 (D. Kan. Oct. 5, 1995) (quoting *Marker v. Union Fid. Life Ins. Co.*, 125 F.R.D. 121, 126 (M.D.N.C. 1989)) (emphasis added).

of facts that are clearly known to persons in the organization and thereby to it."[56] A party does not fulfill its obligations at the Rule 30(b)(6) deposition by stating it has no knowledge or position with respect to a set of facts or area of inquiry within its knowledge or reasonably available.[57]

The Court has reviewed the Naccarato deposition along with the parties' briefs in considerable detail, and finds that Naccarato's preparation to testify as a Rule 30(b)(6) witness regarding Screenworks' knowledge on the designated Subjects was quite clearly inadequate. Naccarato admitted that he did not review any documents other than the notice of deposition in preparation for his deposition. Naccarato also admitted that he did not speak with anyone other than Defendants' counsel in preparation for his deposition. He was unfamiliar with documents and information clearly pertinent to the subjects regarding which he was designated to testify, such as Screenworks' production worksheet. He could not answer many questions and in several instances he instigated the bandying of deposition questioning to Hoyle and Lawrence who also testified they lacked knowledge of the Subjects at issue.

Producing an unprepared witness for a Rule 30(b)(6) deposition "is tantamount to a failure to appear at a deposition" and therefore constitutes sanctionable conduct under Fed. R. Civ. P. 37(d)(1)(A).[58]  In determining the appropriate sanction to be imposed, the court must consider the purposes to be served by the imposition of sanctions."[59] Such purposes include "(1)

---

[56] Fed. R. Civ. P. 30(b)(6) advisory committee's note to 1970 amendment.

[57] *Starlight,*186 F.R.D. at 638 (citation omitted).

[58] *Cherrington Asia Ltd. v. A & L Underground, Inc.*, 263 F.R.D. 653, 658 (D. Kan. 2010) (quoting *Starlight*, 186 F.R.D. at 639).

[59] *RTC v. Williams*, 162 F.R.D. 654, 660 (D. Kan. 1995).

deterring future litigation abuse, (2) punishing present litigation abuse, (3) compensating victims of litigation abuse, and (4) streamlining court dockets and facilitating case management."[60]

The Court finds Screenworks' designation and production of Naccarato as its Rule 30(b)(6) witness to testify on Subjects 1, 2, 4, 6, 14, and 15, when Naccarato was clearly not prepared to answer questions on these Subjects, "is tantamount to a failure to appear at a deposition" and therefore constitutes sanctionable conduct under Fed. R. Civ. P. 37(d)(1)(A). The Court further finds that Naccarato's failure or refusal to answer regarding the factual basis for each affirmative defense, based primarily upon the improper objections and instructions not to answer by defense counsel, constitutes a failure to answer a question asked under Rule 30, which is basis for a Rule 37(a)(3)(B)(i) motion to compel. The Court finds, however, that Plaintiff's requested sanction of striking Defendant Screenworks' affirmative defenses is not warranted, but will instead grant in part the alternative relief requested by Plaintiff.  Accordingly, Defendant Screenworks is ordered to produce its general counsel, Naccarato, for a second deposition fully prepared, as required by Rule 30(b)(6), to testify regarding Subjects 1, 2, 6, 14, and 15.[61]  The Court will also require Screenworks to pay the costs and expenses of Naccarato's second deposition.[62]

---

[60] *Starlight*, 186 F.R.D. at 647.

[61] The Court will not require Screenworks to produce Naccarato for a second deposition as to Subject 4 because, as discussed in the following section, the Court determines that Lawrence is better situated to address that Subject.

[62] *See* Fed. R. Civ. P. 37(d)(3) ("Sanctions may include any of the orders listed in Rule 37(b)(2)(A)(i)-(vi). Instead of or in addition to these sanctions, the court must require the party failing to act, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust.").

### B.      Lawrence Deposition

Screenworks designated and produced Ashley Lawrence, the Human Resource Manager for NEP Broadcasting LLC, to testify as to its knowledge regarding Subjects 1, 3, 4, 9, and 16.[63] During her deposition, Lawrence testified all new employees are required to complete safety basics training within the first 30 days of their employment, which consists of watching a PowerPoint presentation, and that employees have to sign an acknowledgement form, which is kept in their employee file indefinitely, so the company knows employees have completed it.[64] When Lawrence was asked if there was safety basics training in effect when Smith was hired, she could not say because she did not know when he was hired.[65]   Defendants failed to produce the PointPont until well after Lawrence's deposition. Lawrence further testified that such training had been in effect since her employment began in 2003 and if Smith's employment began in 2008, the PowerPoint training would have been in effect when Smith was hired. However, Lawrence testified she did not have any information or knowledge about whether Smith completed the safety basics training nor had she looked at his employment file to see if it contained any acknowledgement that he completed the training.[66] Lawrence testified Hoyle, who was also designated on Subject 4, would address other training received by Smith.[67] She also

---

[63] Lawrence Dep. 5:12–6:16. Defendants' counsel clarified that as to Subjects 4 and 9, Lawrence was prepared to testify regarding general knowledge of Screenworks, but site-specific, more employee-specific information was to be provided by a subsequent deposition set August 25 in California, which presumably was Hoyle's deposition.

[64] Lawrence Dep. 12:10–21; 14:16–19; 15:7–14.

[65] Lawrence Dep. 13:15–18.

[66] Lawrence Dep. 14:20–23; 15:15-18; 37:19–38:19.

[67] Lawrence Dep. 38:22– 40:14.

testified she had no information as to the general job duties and responsibilities of an LED technician like Smith.[68]

As an HR manager and the designated Rule 30(b)(6) representative for Screenworks, Lawrence should have been prepared to provide the information sought on the deposition Subjects. Based upon a review of the deposition transcript, the Court finds Lawrence did little to no preparation for the deposition. This is evidenced by the fact she had not even reviewed Smith's employment file and her inability to answer basic questions regarding his duties, responsibilities, and training. Screenworks has a duty to adequately prepare its Rule 30(b)(6) witnesses so that they may give "complete, knowledgeable and binding answers"[69] on behalf of Screenworks. In this case, Screenworks has provided no explanation for its failure to properly prepare Lawrence for deposition on the referenced Subjects. The Court will therefore order Defendant Screenworks to require Lawrence to review all pertinent employee files and other relevant documents, to produce Lawrence for a second deposition (at Screenworks' cost), and to ensure that she is prepared, as required by Rule 30(b)(6), to testify regarding Subjects 1, 4, 9, and 16,[70] including specifically the PowerPoint training referenced in her original deposition and whether Smith reviewed it. The Court will also require Screenworks to pay, pursuant to Rule 37(d)(3), the costs and expenses of Lawrence's second deposition.

### C.      Hoyle Deposition

Plaintiff also argues that the testimony provided by Screenworks' Rule 30(b)(6) witness, Kevin Hoyle, was inadequate. Plaintiff claims that Hoyle, who is Vice President of Operations

---

[68] Lawrence Dep. 40:15–18.

[69] *Starlight*, 186 F.R.D. at 638.

[70] The Court will not require Screenworks to produce Lawrence to testify regarding Subject 3, as Navarro did answer Plaintiff's questions regarding that Subject.

for Screenworks, had little general information and no specific information about several of the Subjects for which he was designated to testify regarding Screenworks' knowledge. Screenworks designated and produced Hoyle to testify as to its knowledge regarding Subjects 4, 7, 8, 9, 10, 11 and 12.[71] Early in his deposition, Hoyle testified that he reviewed only two documents in preparing for the deposition: Screenworks' incident report and production worksheet,[72] and that he spent five minutes looking at them.[73] He later testified that the first time he had seen the production worksheet was the day before his deposition.[74]

### 1.    Subjects 4, 7, 9, 10, and 12

Screenworks designated Hoyle to testify regarding Screenworks' knowledge Defendant Smith's employment history, training, duties, and responsibilities for the events held at the Kansas Speedway in October 2013 (Subject 4), as well as safety policies and procedures for the Kansas Speedway project (Subjects 7 and 9).  A review of Hoyle's deposition transcript reveals that while Hoyle provided general information, he had no specific information regarding Smith's training, duties, and responsibilities, or any safety policies and procedures for the Kansas Speedway event where Plaintiff was injured. When asked if he had information about Smith's duties and responsibilities relating to the October 2013 Kansas Speedway event, Hoyle stated, "I have very little information on the job in 2013. I have what was presented to me, which is this sheet of paper right here in our production worksheet for that job."[75]  Hoyle further testified that other than knowing Smith was an LED technician at the Kansas Speedway on October 7, 2013,

---

[71] Hoyle Dep. 6:13–18.

[72] Hoyle Dep. 7:16–19.

[73] Hoyle Dep. 9:6–8.

[74] Hoyle Dep. 76:18–19.

[75] Hoyle Dep. 33:25–34:3.

he had no specifics of what Smith was doing or his duties and responsibilities.[76]  Plaintiff's counsel asked Hoyle if there were any type of policies or procedures to be following when undertaking the work performed at the Kansas Speedway on October 7, 2014.  Hoyle answered that he was "not familiar with [Smith's] job prior to seeing what [he saw] here."[77]  He further stated, "I don't know anything about this particular job until I saw this paperwork yesterday."[78]  Hoyle testified safety meetings are held and Smith would have been required to attend if he was present that day, but he could not say if Smith actually attended any of the meetings. Hoyle also testified there is a website accessible to employees as part of their training, but he could not say if Smith had utilized the training tool.[79]  Hoyle testified he "imagined" Smith received on-the-job training, but could not provide any specific information about the training because he was not Smith's instructor or involved with his training.[80]

A review of Hoyle's deposition testimony on Subjects 7 and 9 shows that Hoyle repeatedly stated he was not familiar with the Kansas Speedway project or any safety procedures or policies for that job. Hoyle testified he did not believe there were any written policies or procedures for the work performed that day and stated "it's all on-the-job training."[81]  Hoyle further testified while he was not involved with Smith's training, Smith would have been trained on how to safely put up and take down his video screen, but Hoyle could not provide any more

---

[76] Hoyle Dep. 36:13–21.

[77] Hoyle Dep. 37:16–21.

[78] Hoyle Dep. 38:15–16.

[79] Hoyle Dep. 27:16–20; 29:–8.

[80] Hoyle Dep. 41:16–17; 42:8–9.

[81] Hoyle Dep. 38:25.

specifics.[82] He also indicated that he was the "supervisor over the people that are supervising [the LED technicians]," and there were other managers between him and the LED technicians.[83]

This same theme continues with Hoyle's testimony with regard to Subject 10 (training provided to employees and/or contracted workers for the Kansas Speedway project) and Subject 12 (Screenworks' knowledge of the procedures, practices and protocols for handling of trusses). Although Hoyle was knowledgeable and answered a number of questions generally about these Subjects, he could not answer questions pertaining to the Kansas Speedway project at issue.

Defendants argue that Plaintiff's counsel had the opportunity to ask Smith during his July 2016 deposition to identify anyone who may have provided him on-the-job training, but failed to inquire. However, as Plaintiff points out, Smith was asked and he denied receiving any computer or on-the-job training.[84] Smith also denied attending any safety meetings since being in the field as a LED technician.[85] Smith did testify that his duties at the Kansas Speedway in October 2013 were "to build the screen."[86] In any event, the problem with Defendants' argument is that Hoyle's testimony suggests that Smith may have received some on-the-job training, but Hoyle could not testify whether Smith actually received the training.

Based upon Hoyle's repeated statements he was not familiar with this specific Kansas Speedway project and his admitted very limited deposition preparation, Screenworks either failed to designate a knowledgeable person or failed to prepare Hoyle properly so that he could

---

[82] Hoyle Dep. 40:1–2.

[83] Hoyle Dep. 59:18–25.

[84] Smith Dep. 13:3–7; 14:9–11.

[85] Smith Dep. 13:8–14.

[86] Smith Dep. 20:12–14.

give complete, knowledgeable, and binding answers on the designated Subjects. The Court will therefore order Defendant Screenworks to produce Hoyle or another corporate representative who is prepared, as required by Rule 30(b)(6), to testify regarding Subjects 4, 7, 9, 10, and 12.[87] It may be that Screenworks has no information or documentation regarding these Subjects relating specifically to the work performed on October 7, 2013 at the Kansas Speedway. But Screenworks must provide Hoyle or another witness who has prepared and looked into these Subjects, and who can either confirm that Screenworks has no such information or documentation or  can testify regarding any information or documentation responsive to these Subjects.

### 2.      Subject 8

Screenworks also designated Hoyle to testify about its policy for hiring and supervising contracted stagehands in October 2013 (Subject 8). Hoyle admitted he did not know anything about how stagehands were hired for the subject project at the Kansas Speedway.[88] Likewise, he admitted he did not know anything about supervision of stagehands at the project at the Kansas Speedway and was not aware of any written or unwritten policy relating to the hiring of contracted stagehands.[89] Screenworks had a duty to ensure necessary inquiries were made so its Rule 30(b)(6) witness could testify fully and accurately as to Subject 8. Hoyle's deposition reflects inadequate preparation and knowledge as Screenworks' designated 30(b)(6) witness with respect to Subject 8.  Screenworks shall produce Hoyle again or produce another 30(b)(6)

---

[87] The Court finds Hoyle's testimony regarding Subject 11 (guidance or directions provided to Screenworks' employees concerning safety), which Subject is not specifically limited to the October 7, 2013 Kansas Speedway project, was sufficient and will not require Hoyle to answer additional deposition questions on this Subject.

[88] Hoyle Dep. 52:23.

[89] Hoyle Dep. 53:12-16; 58:1–10.

witness knowledgeable and prepared to testify as to Subject 8. Defendant Screenworks shall pay for deposition expenses related to Hoyle or another 30(b)(6) witness on Subjects Subjects 4, 7, 8, 9, 10, and 12.

## IV.    RULE 37(a)(5) EXPENSES

Although the Court declines to sanction Defendant Screenworks by striking its affirmative defenses as sought by Plaintiff's motion, the Court does grant the alternative relief requested by Plaintiff and orders Screenworks to produce Rule 30(b)(6) witnesses for deposition or re-deposition at Screenworks' cost. Therefore, the Court will subsequently consider whether an award of Plaintiff's reasonable expenses associated with Plaintiff's motion is warranted. Federal Rule of Civil Procedure 37(a)(5)(C) provides that if a motion to compel discovery "is granted in part and denied in part, the court . . . may, after giving an opportunity to be heard, apportion the reasonable expenses for the motion."[90]

Because Plaintiff did not request his expenses under Rule 37(a)(5) in his motion, Defendant Screenworks has not received the required "opportunity to be heard."[91]  Accordingly, the Court will grant Plaintiff until **November 30, 2016** to file a motion under Fed. R. Civ. P. 37(a)(5) requesting his reasonable expenses incurred in filing his motion for sanctions, along with affidavits and documentation supporting the requested amount of reasonable expenses, including attorney's fees. Defendant Screenworks and/or its attorneys shall have **ten (10) days thereafter** to file a response.  The Court will thereafter determine whether Defendant Screenworks and/or its attorneys should bear all or a portion of Plaintiff's claimed reasonable expenses incurred in making his motion.

---

[90] Fed. R. Civ. P. 37(a)(5)(C).

[91] *Kansas Wastewater*, 217 F.R.D. at 532.

**IT IS THEREFORE ORDERED THAT** Plaintiff's Motion for Sanctions (ECF No. 68) is granted in part and denied in part.  Plaintiff's request for an order striking Screenworks' affirmative defenses is DENIED, but his alternate request for Screenworks to produce for deposition Naccarato, Lawrence, Hoyle, and/or another Rule 30(b)(6) witness prepared to answer questions on the requested Subjects is GRANTED. On or before **November 18, 2016**, Defendant Screenworks is ordered to properly prepare and produce Naccarato for a second deposition in accordance with Rule 30(b)(6) regarding Subjects 1, 2, 6, 14, and 15. This deposition shall occur via video conference at the cost and expense of Screenworks pursuant to Fed. R. Civ. P. 37(d)(3).[92]

**IT IS FURTHER ORDERED THAT** on or before **November 18, 2016**, Defendant Screenworks is ordered to prepare (which preparation shall necessarily include review of all relevant employee files) and produce Lawrence for a second deposition in accordance with Rule 30(b)(6) regarding Subjects 1, 4, 9, and 16, including the PowerPoint training referenced in her original deposition. This deposition shall occur via video conference at the cost and expense of Screenworks pursuant to Fed. R. Civ. P. 37(d)(3).

**IT IS FURTHER ORDERED THAT** on or before **November 18, 2016**, Defendant Screenworks shall produce Hoyle, or another 30(b)(6) witness, knowledgeable and prepared in accordance with Rule 30(b)(6), to testify regarding Subjects 4, 7, 8, 9, 10, and 12. This deposition shall occur via video conference at the cost and expense of Screenworks pursuant to Fed. R. Civ. P. 37(d)(3).

---

[92] The Court notes that the original depositions of Naccarato, Lawrence, and Hoyle were taken by video conference.  Therefore, the same method will be required for all further depositions pursuant to this order.

**IT IS FURTHER ORDERED THAT** Plaintiff shall have until <u>**November 30, 2016**</u> to file a motion under Rule 37(a)(5)(C) requesting his reasonable expenses incurred in filing his motion for sanctions.  Defendant Screenworks and/or its attorneys shall have ten (10) days thereafter to file a response.

IT IS SO ORDERED.

Dated in Kansas City, Kansas, this 28th day of October, 2016.

Teresa J. James
U. S. Magistrate Judge