# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

GEORGE MILLER,

    Plaintiff,

v.

NEP GROUP, INC. ET AL.,

    Defendants.

Case No. 15-CV9701-JAR

## MEMORANDUM AND ORDER

Plaintiff brought suit alleging he sustained an injury to his right foot while helping to take down a large video screen at the Kansas Speedway in Kansas City, Kansas. Kansas law provides that an employee may not recover twice from an employer for an injury that is covered by workers' compensation. Before the court is Defendants' Joint Motion for Summary Judgment based on the exclusive remedy provision of the Kansas Workers' Compensation Act ("KWCA") (Doc. 102). The motion is fully briefed and the Court is prepared to rule.[1] For the reasons stated below, the Court grants the motion for summary judgment.

## I. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if the moving party demonstrates "that there is no genuine dispute as to any material fact" and that it is "entitled to judgment as a matter of law."[2] In applying this standard, the Court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party.[3] "There is no genuine [dispute] of material

---

[1] Plaintiff filed a motion for leave to file a sur-reply (Doc. 108), which Defendants responded to and opposed (Doc. 109). The Court read and considered these filings, therefore leave to file a sur-reply is unnecessary. Accordingly, the Court denies that motion as moot.

[2] Fed. R. Civ. P. 56(a).

[3] *City of Herriman v. Bell*, 590 F.3d 1176, 1181 (10th Cir. 2010).

1

fact unless the evidence, construed in the light most favorable to the non-moving party, is such that a reasonable jury could return a verdict for the non-moving party."[4] A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim."[5] A dispute of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way."[6]

The moving party initially must show the absence of a genuine dispute of material fact and entitlement to judgment as a matter of law.[7] In attempting to meet this standard, a movant who does not bear the ultimate burden of persuasion at trial need not negate the nonmovant's claim; rather, the movant need simply point out to the court a lack of evidence for the nonmovant on an essential element of the nonmovant's claim.[8]

Once the movant has met the initial burden of showing the absence of a genuine dispute of material fact, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial."[9] The nonmoving party may not simply rest upon its pleadings to satisfy its burden.[10] Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the

---

[4] *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 255 (1986)).

[5] *Wright ex rel. Trust Co. of Kan. v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)).

[6] *Adler,* 144 F.3d at 670 (citing *Anderson,* 477 U.S. at 248).

[7] *Spaulding v. United Transp. Union*, 279 F.3d 901, 904 (10th Cir. 2002), *cert. denied* 537 U.S. 816 (2002) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)).

[8] *Adams v. Am. Guar. & Liab. Ins. Co.*, 233 F.3d 1242, 1246 (10th Cir. 2000) (citing *Adler*, 144 F.3d at 671); *see also Kannady v. City of Kiowa*, 590 F.3d 1161, 1169 (10th Cir. 2010).

[9] *Anderson,* 477 U.S. at 256; *Celotex,* 477 U.S. at 324; *Spaulding,* 279 F.3d at 904 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986)).

[10] *Anderson,* 477 U.S. at 256; *accord Eck v. Parke, Davis & Co.,* 256 F.3d 1013, 1017 (10th Cir. 2001).

nonmovant."[11] In setting forward these specific facts, the nonmovant must identify the facts "by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein."[12] To successfully oppose summary judgment, the nonmovant must bring forward more than a mere scintilla of evidence in support of his position.[13] A nonmovant may not create a genuine issue of material fact with unsupported, conclusory allegations."[14]

Finally, summary judgment is not a "disfavored procedural shortcut"; on the contrary, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action."[15]

## II.  UNCONTROVERTED FACTS

As an initial matter, the Court notes that Plaintiff's vexatious method of controverting Defendants' statement of material facts has unduly burdened the Court's time. Defendants asserted fourteen material facts in support of their motion for summary judgment. Yet Plaintiff took thirty-eight pages to deny all but three partial facts, arguing: 1) the cited record did not support the contention; 2) the cited testimony did not authenticate the identified exhibit; and/or 3) the cited support contained inadmissible hearsay. Plaintiff also claimed in many instances that other evidence controverted the stated contention. Plaintiff then presented a statement of additional facts ("SOAF") that mostly contained immaterial facts or required unreasonable inferences.

> When deciding a summary judgment motion, the Court may consider evidence submitted, if admissible in substance, even if it would not be

---

[11] *Mitchell v. City of Moore, Okla.,* 218 F.3d 1190, 1197–98 (10th Cir. 2000) (quoting *Adler,* 144 F.3d at 670–71); *see Kannady,* 590 F.3d at 1169.

[12] *Adler*, 144 at 671.

[13] *Vitkus v. Beatrice Co.,* 11 F.3d 1535, 1539 (10th Cir. 1993).

[14] *Tapia v. City of Albuquerque*, 170 F. App'x. 529, 533 (10th Cir. 2006).

[15] *Celotex,* 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

admissible, in form, at the trial. A party may properly authenticate a document "through a supporting affidavit or deposition excerpt from anyone with personal knowledge of the facts contained in the exhibit."[16]

An affidavit is not required to authenticate every document submitted for consideration at summary judgment.[17] Documents produced during discovery that are on the letterhead of the opposing, producing party are authentic *per se* under Rule 901 of the Federal Rules of Evidence.[18] "The appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances" may also satisfy the authentication requirement.[19] An exhibit may also qualify as "self-authenticated" under Fed. R. Evid. 902.

Plaintiff claims that Exhibits A, B, C, and D were not properly authenticated. The Court disagrees. First, Plaintiff acknowledged that various deponents identified and referenced these exhibits during their depositions, albeit with different exhibit names. Second, these exhibits were produced during discovery and either are on business letterheads or contain distinctive characteristics that satisfy the authentication requirement. The Court finds Plaintiff's authentication arguments disingenuous.

With respect to hearsay, the Court may consider hearsay testimony in support of summary judgment if the evidence may ultimately be presented at trial in an admissible form. Deposition testimony or sworn affidavits are admissible to the extent the content of the statement is based on personal knowledge.[20] To the extent the content of any such statement is obviously not substantively within the personal knowledge or perception of the witness, the Court

---

[16] *Peterson v. Garmin Int'l., Inc.*, 833 F. Supp. 2d 1299, 1304 (D. Kan. 2011) (quoting *Toney v. Cuomo*, 92 F. Supp. 2d 1186, 1196 (D. Kan. 2000*), aff'd*, 221 F.3d 1353 (10th Cir. 2000).).

[17] *Law Co. v. Mohawk Const. and Supply Co.*, 577 F.3d 1164, 1170 (10th Cir. 2009).

[18] *Id.* (citations omitted).

[19] Fed. R. Evid. 901(b)(4).

[20] Fed. R. Civ. P. 56(c)(4).

disregards the same, as statements of mere belief in an affidavit or deposition testimony must be disregarded.[21] Business records produced during discovery and those that may be authenticated by the custodians of records are excepted from the hearsay rule.[22] Moreover, the Court can consider these records to the extent they are not offered for the truth of the matter asserted.[23] With these principles in mind, the Court overrules the hearsay objections to Exhibits A-D because they are business records produced during discovery.

Local Rule 56.1(e) states "all responses [to statements of uncontroverted facts] must fairly meet the substance of the matter asserted."[24] After reviewing and considering Plaintiff's responses to paragraphs 1, 2, 3, 4, 7, 9, 10, 11, 12, 13, and 14 of Defendants' statement of material facts ("SOMF"), the Court finds Plaintiff has failed to comply with this rule. For example, SOMF 1 simply asserts that Screenworks was performing work at the Speedway on October 7, 2013. Plaintiff denied SOMF 1even though his own sixty additional facts would support the asserted fact. Plaintiff inexplicably denied other benign SOMFs, but the Court will not belabor this point.

Instead, with the above rules of law and principles of application in mind, the following material facts are either uncontroverted or, if controverted, are construed in the light most favorable to Plaintiff. Defendant Screenworks, LLC is in the entertainment business, providing LED screens for use in outdoor events across the nation.[25] During the relevant time, Screenworks and Motor Racing Network, Inc. ("MRN") had an agreement that says Screenworks shall be the sole supplier of large screen video displays for MRN events held at various venues,

---

[21] Fed. R. Evid. 602.

[22] Fed. R. Evid. 803(6).

[23] Fed. R. Evid. 801.

[24] D. Kan. Rule 56 (e).

[25] Doc. 105-8, Ex. K, Naccarato Dep., Vol. I at 26: 20–22.

including the Kansas Speedway in Kansas City, Kansas. As part of its business, Screenworks builds the screens, provides technical support during events, and takes down the screens provided at these events. Screenworks sends its employees to these jobs, but also hires local stagehands to assist with building and tearing down the screens.

In early October 2013, Screenworks supplied a large screen for a racing event at the Kansas Speedway. Screenworks' work order for this event indicated: build the screen on October 1; tech screen on October 2-6; and load out (*i.e.,* tear down the screen) on October 7. For this particular job, Screenworks sent several of its employees, including Defendant Jeffrey Smith, an LED technician, to Kansas Speedway. Screenworks also hired stagehands from the Kansas City chapter of International Alliance of Theatrical and Stage Employees Local 31 ("IATSEL31") to assist Smith with building and tearing down the screen, and loading equipment onto its trucks. Plaintiff was one of these stagehands.

IATSEL31 is a referral hall that provides stagehand labor for production companies such as Screenworks.[26] It receives jobs by phone or email, and dispatches its members to the event site. Whoever requests the stagehands is responsible for communicating the tasks to be completed and the safety protocols for that particular job.[27] Screenworks and IATSEL31 have an understanding that Screenworks will pay the stagehands an agreed hourly rate plus 45% for "Employers FICA and Missouri State Unemployment tax, Retirement, Workmen's Compensation Insurance....(sic)"[28]

On October 7, 2013, as the lead LED technician for the job, Miller directed the stagehands during the take-down of the large video screen. During that process, a truss crushed

---

[26] Doc. 105-2, Ex. E, Taylor Dep. at 10–12; 25: 11–21.

[27] *Id.* at 25:12–16; Doc. 105-3; Doc. 105-3, Ex. F, Miller Dep. at 14:23–15:6–11 ("out of town people" [production company] tells him what to do even if he is the acting steward).

[28] Doc. 105-2, Taylor Dep. at 24:4–9; Doc. 104-3, Ex. C.

Plaintiff's right foot. After sitting out for approximately twenty-five minutes, Plaintiff, with the use of a stick to help him walk, assisted the other stagehands with "push[ing] the rest of the stuff back to the truck."[29] After finishing the job, Plaintiff went directly to see the "workers' comp doctor."[30] Plaintiff filed a workers' compensation claim with IATSEL31's insurance carrier, Travelers.[31]

Smith has no independent recollection regarding the October 7, 2013 accident, other than what was stated in his typed statement on November 4, 2013:

> Injury report for Kansas City Nascar.....w/o#5359
>
> The incident happened during loadout on Monday 10/7/2013. When we were lowering the tall vertical upright truss section of the tower and the motor took the weight of the upright, the horizontal section truss section connected to it shifted up and caught the stagehands foot. I stopped immediately to assist the stagehand down off of the truss. I asked him if he was ok and he said "yeah im fine" then I asked him if he needed either ambulance or if he needed one of us to drive him to the hospital. He declined both of these options and said once again 'im fine". So we continued loadout after a small break for the stagehand to walk off whatever pain he was in. The rest of the loadout went ok and the stagehand who was allegedly hurt help finish off the truck load and did not appear to be in any pain.

He filled out an incident report on December 12, 2013, that mainly referenced his typed statement.

Defendants Screenworks and NEP Broadcasting, LLC are subsidiaries of Defendant NEP Group, Inc. NEP Group owns the holding companies that own Screenworks. NEP Broadcasting serves as a payroll entity for employees within the NEP group of companies.[32]

---

[29] Doc. 105-3, Ex. F, Miller Dep. at 92:6–15.

[30] *Id.* at 79:16–24.

[31] Doc. 106-10, Ex. P at 2.

[32] Doc. 105-8, Ex. K, Naccarato Dep. at 26:23–27:1–4.

**III. DISCUSSION**

Defendants seek summary judgment based on the exclusive remedy provision of the Kansas Workers' Compensation Act ("KWCA" or "the Act").[33] Kansas law provides that an employee may not recover twice from an employer for an injury that is covered by workers' compensation. K.S.A. 44-501(b) provides:

> Except as provided in the workers compensation act, no employer, or other employee of such employer, shall be liable for any injury for which compensation is recoverable under the workers compensation act nor shall an employer be liable to any third party for any injury or death of an employee which was caused under circumstances creating a legal liability against a third party and for which workers compensation is payable by such employer.

"The exclusive remedy provision protects both employers and employees. Employees are guaranteed a form of recovery against their employer; and employers are protected against paying for the employees damages twice — once through workers' compensation and again through a civil action for damages."[34] The Kansas Supreme Court has emphasized the provisions of the KWCA are to be "liberally construed for the purpose of bringing a worker under the Act whether or not desirable for the specific individual's circumstances."[35]

This protection from suit extends to employers who may not be the immediate employers of the injured party. K.S.A. 44-503(a) states:

> Where any person (in this section referred to as principal) undertakes to execute any work which is a part of the principal's trade or business or which the principal has contracted to perform and contracts with any other person (in this section referred to as the contractor) for the execution by or under the contractor of the whole or any part of the work undertaken by the principal, the principal shall be liable to pay to any worker employed in the execution of

---

[33] K.S.A. 44-501 (2014); *see Coble v. Williams*, 282 P.2d 425, 429–30 (Kan. 1955) (applying the Kansas Workers' Compensation Act to a case in which the claimant was injured while working in Kansas despite the following: (1) the claimant resided in Oklahoma, (2) the employer's principal place of business was Missouri, and (3) the employment contract was entered into in Missouri).

[34] *Cuiksa v. Hallmark Hall of Fame Prods., Inc.*, 252 F. Supp. 2d 1166, 1170–71 (D. Kan. 2003)

[35] *Zehring v. Wickham*, 658 P.2d 1004, 1008 (1983).

8

the work any compensation under the workers compensation act which the
principal would have been liable to pay if that worker had been immediately
employed by the principal; and where compensation is claimed from or
proceedings are taken against the principal, then in the application of the
workers compensation act, references to the principal shall be substituted for
references to the employer, except that the amount of compensation shall be
calculated with reference to the earnings of the worker under the employer by
whom the worker is immediately employed. For the purposes of this
subsection, a worker shall not include an individual who is a self-employed
subcontractor.

The Kansas Supreme Court has provided two separate tests—known as the *Hanna* tests—for determining whether an employer is a statutory employer.[36] An employer is the statutory employer of the worker if either of the following are met:

> (1) [I]s the work being performed by the independent contractor and the injured employee necessarily inherent in and an integral part of the principal's trade or business? (2) is the work being performed by the independent contractor and the injured employee such as would ordinarily have been done by the employees of the principal?[37]

If either of the above tests is answered with a "yes," the work being done is part of the principal's trade or business and the employee's sole remedy is under the KWCA.[38]

### A. Screenworks

Screenworks claims that it was Plaintiff's statutory employer on October 7, 2013. Plaintiff argues that a dispute exists as to whether the KWCA applies in this case because Defendants have failed to offer evidence that Plaintiff was not a self-employed person who elected to bring himself within the KWCA. The Court rejects this argument. Plaintiff's own statement of facts dispels any dispute as to him being a self-employed subcontractor. He considered IATSEL31 his employer. He received paychecks from IATSEL31; it issued him W-2s (instead of 1099s) and provided him with benefits, including health insurance, a pension plan,

---

[36] *Bright*, 837 P.2d at 356.

[37] *Id.* (quoting *Hanna v. CRA, Inc.*, 409 P.2d 786, 789 (1966)).

[38] *Bright*, 837 P.2d at 356.

and workers' compensation benefits. The undisputed facts establish that IATSEL31 was Plaintiff's employer at all relevant times. This, however, does not foreclose Screenworks from being Plaintiff's statutory employer.

The real issue here is whether the work performed by Plaintiff was inherent in or an integral part of Screenworks' trade or business, or, alternatively, whether the work would have ordinarily been done by Screenworks' employees. Screenworks meets both *Hanna* tests. Screenworks' business was providing LED screens for use in outdoor events, which required building the screen, providing technical support, and dismantling the screen. The work being performed by Plaintiff — tearing-down the screen — was an integral part of Screenworks' business. The Court concludes that Screenworks was Plaintiff's statutory employer on October 7, 2013, under the first *Hanna* test.

Screenworks also qualified as Plaintiff's statutory employer under the second *Hanna* test. It is uncontroverted that Screenworks' own employees would have undertaken the tear-down of the screen. Indeed, Miller was helping to perform that task. For racing events, Miller's duties were "set up the screen, get it working . . . Then tear down the screen when the race is over."[39] Stagehands were hired to help Screenwork employees unload the truck, get gear to a certain spot, erect the screen, take down the screen, reload the truck, and to provide general labor.[40]

Because Screenworks was Plaintiff's statutory employer on October 7, 2013, the KWCA bars this negligence action against Screenworks.[41] Plaintiff's sole remedy against Screenworks is under the Act.

---

[39] Doc. 105-6, Ex. I, Smith Dep. at 15:14–18.

[40] *Id. at* 16: 1–16, 17:6–8; 25:22–23.

[41] Screenworks may also be entitled to immunity as a special employer. A special employer/employee relationship exists if three things are satisfied: (a) the employee has made a contract of hire, express or implied, with the second employer; (b) the work being done is essentially that of the second employer; and (c) the second employer has the right to control the details of the work. *Scott v. Altmar, Inc.*, 38 P.3d 673, 676 (2002). Because the

## B. Jeffrey Smith

Smith argues he is entitled to summary judgment because he was Plaintiff's co-employee and would have been entitled to receive workers' compensation benefits had he suffered an injury on October 7, 2013. Plaintiff argues that a material issue exists as to whether Smith would have been entitled to workers' compensation given his potential use or consumption of alcohol, drugs, or medication on October 7, 2013, and/or his reckless violation of the training he received to safely take-down the video screen. K.S.A. 40-501(a)(1)(D) disallows compensation for an injury if it results from the employee's reckless violation of their employer's workplace safety rules or regulations. K.S.A. 40-501(b)1)(A) disallows compensations for an injury that was contributed to by the employee's use of alcohol or other prohibited substances.[42]

The Court finds that Plaintiff has failed to establish that a factual dispute exists regarding Smith's entitlement to workers' compensation based on his alleged use of alcohol or other prohibited substances. Smith's failure to recall whether he consumed alcohol, drugs, or medication does not mandate an inference that he consumed prohibited substances on October 7, 2013, and thus would have been disallowed workers' compensation under K.S.A. 44-501(b)(1)(A). Even if that negative inference was made, it constitutes, at most, a "mere scintilla

---

Court disposes of this case under the statutory employee analysis, the Court considers many of the issues Plaintiff raised to be immaterial (*i.e.*, whether an express or implied contract existed between Plaintiff and Screenworks, who controlled Plaintiff's work, etc.).

[42] K.S.A. 44-501(b)(1)(A) provides:

> The employer shall not be liable under the workers compensation act where the injury, disability or death was contributed to by the employee's use or consumption of alcohol or drugs, chemicals or any other compounds or substances, including, but not limited to, any drugs or medications which are available to the public without a prescription from a health care provider, prescription drugs or medications, any form or type of narcotic drugs, marijuana, stimulants, depressants or hallucinogens.

of evidence," which is insufficient to create a genuine issue of material fact.[43]  Moreover, "[n]either entitlement to receive nor actual receipt of workers compensation benefits by a coemployee tortfeasor is required for fellow servant immunity to attach and bar a civil suit. What matters is whether that coemployee was acting within the scope and course of employment when [he] caused injury to another."[44]  It is uncontroverted that Smith was acting within the scope of employment when Plaintiff was injured.

Likewise, Plaintiff has failed to establish that a dispute exists regarding whether Smith recklessly violated Screenworks' safety rules or regulations.  Plaintiff attempts to create a dispute by pointing to evidence that Screenworks provided training and a safety manual to its employees and required them to follow safety protocols, but Smith denied receiving any such training or documentation.  The Court finds this argument a non sequitur.  Kansas law provides that,

> [t]o be reckless, it must be something more than negligent.  It must not only be unreasonable, but it must involve a risk of harm to others substantially in excess of that necessary to make the conduct negligent.  It must involve an easily perceptible danger of death or substantial physical harm, and the probability that it will so result must be substantially greater than is required for ordinary negligence.[45]

Smith must have actual knowledge of the safety policy in order to recklessly violate it.[46]

---

[43] *Allen v. Muskogee, Okla*., 119 F.3d 837, 846 (10th Cir. 1997) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1986)).

[44] *Scott v. Hughes*, 132 P.3d 889, 897 (Kan. 2006).

[45] *Gould v. Wright Tree Serv., Inc*., No. 114,482, 2016 WL 2811983 at *10 (Kan. Ct. App. May 13, 2016) (quoting *Wiehe v. Kukal*, 592 P.2d 860, 864 (1979) and the Restatement (Second) of Torts § 500(a) (19654)).

[46] *Id.* at *10-11 (explaining that requiring knowledge of a safety policy as part of the recklessness element comports with both the plain language of the statute and prior applications of the provision).  Workers Compensation Board has allowed workers compensation for injuries based at least partly on the claimant's ignorance of a specific safety policy.  *See Castillo–Chavez v. Ammex Masonry, Inc* ., No. 1,062,121, 2013 WL 2455712, at *8 (Kan. Work. Comp. Bd. 2013) (claimant climbed down scaffolding frame in violation of safety policy to use ladder*); Solorzano v. Packers Sanitation Serv., Inc*., No. 1,056,986, 2012 WL 369780, at *4 (Kan. Work. Comp. Bd. 2012) (Claimant violated safety policy to lock out machinery prior to cleaning; "(a) worker must be aware of and understand a safety rule before she can be said to have recklessly violated the rule.").

The Court concludes that under the circumstances, both Smith and Plaintiff were employees of Screenworks on October 7, 2013. Because Smith was Plaintiff's co-employee, the KWCA bars this negligence action against Smith.

### C. *NEP Group, Inc. and NEP Broadcasting, LLC*

NEF Group, Inc. and NEP Broadcasting, LLC claim they are entitled to summary judgment because their only connection to the case is their corporate relationship with Screenworks. And even if that was not the case, they contend they are immune from suit under the exclusive remedy provision because Plaintiff's claim arose during the course of performing work that was integral to their business. Plaintiff argues the evidence he cited directly contradicts their non-involvement, and instead shows they are responsible for and direct the training received by Screenworks employees. He further argues that they cannot have it both ways — deny involvement regarding activities on October 7, 2013 and claim statutory employer status via their corporate relationship.

In *Love v. Flour Mills of America*,[47] the Tenth Circuit disapproved the attempt by a parent company to "avoid the consequences of its separate corporate identity to claim immunity, as an alter ego employer of its subsidiary employer's injured employees."[48] Thus, Screenworks' status as a statutory employer does not extend to NEP Group or NEP Broadcasting.

Even though they are not immune from suit, the Court, nonetheless, finds these Defendants are entitled to summary judgment. An employer has a nondelegable duty to provide safe working conditions for its employees. Courts do not lightly assume that a parent corporation has agreed to accept this responsibility.[49] The parent-shareholder is not responsible

---

[47] 647 F.2d 1058 (10th Cir. 1981).

[48] *Id.* at 1062.

[49] *Muniz v. Nat'l Can Corp.*, 737 F.2d 145, 147 (1st Cir. 1984).

for the working conditions of its subsidiary's employees merely on the basis of parent-subsidiary relationship.[50] A parent corporation may be liable for unsafe conditions at a subsidiary only if it assumes a duty to act by affirmatively undertaking to provide a safe working environment at the subsidiary. Providing general safety guidelines is insufficient to show that a parent corporation affirmatively assumed that responsibility.[51] Plaintiff's evidence simply shows that NEP provided general safety materials to all of its subsidiaries. A duty is not proved by conduct consistent with an intention solely or primarily to serve the parent's own purposes.[52] The Court concludes that there is no independent cause of action against the NEP Defendants because the tort alleged against them was that they failed to perform Screenwork's duty of providing adequate training to Smith.

## IV. CONCLUSION

Screenworks was Plaintiff's statutory employer on October 7, 2013. Thus, the KWCA bars Plaintiff from pursuing this action against Screenworks and Smith. Plaintiff's sole remedy against those two Defendants is under the Act. As for the NEP Defendants, they are immune from this suit under corporate law.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendants' Joint Motion for Summary Judgment (Doc. 102) is GRANTED .

**IT IS FURTHER ORDERED** that Plaintiff's motion for leave to file a sur-reply (Doc. 108) is **DENIED** as moot.

**IT IS SO ORDERED.**

---

[50] *Love*, 647 F.2d at 1063.

[51] *Muniz*, 737 F.2d at 149; *Davis v. Liberty Mut. Ins. Co.*, 525 F.2d 1204 (5th Cir. 1976); *Rick v. RLC Corp.*, 535 F. Supp. 39, 45 (E.D. Mich. 1981) (explaining evidence must show more than an incidental rendering of service by a parent corporation to establish a duty for the safe operations of a subsidiary).

[52] *Rick*, 535 F. Supp. 46–47.

Dated: May 16, 2017

S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE